Sarokin, District Judge, sitting by designation, concurred and filed opinion.

**David DeLEON and Mania DeLeon, for themselves and on behalf of their infant son, Lorin, Appellants,**

**v.**

**SUSQUEHANNA COMMUNITY SCHOOL DISTRICT; William Stracka, Superintendent, officially and in his individual capacity; Jim Bucci, officially and in his individual capacity; Bob Williams, officially and in his individual capacity; Mike Josko, officially and in his individual capacity; Mary Pat Darrow, officially and in her individual capacity; Mary Jane Redden, officially and in her individual capacity; Jack McMahon, officially and in his individual capacity; Donald Morgan, officially and in his individual capacity; Nancy Washburn, officially and in her individual capacity; Charles Fisher, officially and in his individual capacity, Appellees.**

**No. 83–3446.**

United States Court of Appeals, Third Circuit.

Argued April 24, 1984.

Decided Oct. 30, 1984.

Ronald R. Benjamin (argued), Binghamton, N.Y., for appellants.

Paul L. Stevens (argued), John J. Cerra, Curtin & Heefner, Carbondale, Pa., for appellees.

Before ADAMS and BECKER, Circuit Judges, and SAROKIN, District Judge *

### OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the question whether a change in the method of transporting a seriously handicapped child to a special education facility can be considered a change in "educational placement" within the meaning of the Education of All Handicapped Children Act, 20 U.S.C. § 1415(e)(3) ("EHA"). Section 1415(e)(3), which is known as the "stay put" provision, requires that a school district keep a handicapped child in his or her current "educational placement" while conducting the statutorily mandated "due process". proceedings concerning changes in the child's educational program. Thus, if the change involved in this case is a change in "educational placement," the parents of the child were entitled to a "due process" hearing under section 1415(b)(2) before the change became effective.

The change at issue involves the method by which a handicapped child, Lorin DeLeon, is transported to school. During the 1982–83 school year, appellant Mania DeLeon, Lorin's mother, transported Lorin to school in her own car. Under the chal-

lenged modification, Lorin was to be transported together with other children by someone other than his parent, slightly increasing Lorin's travel time on the trip home. After a hearing, the district court dismissed the complaint. We conclude that the plaintiffs failed to demonstrate on the trial record that the change involved is a change in "educational placement." The alleged adverse effect on Lorin's ability to benefit from his education, which is the critical element in determining whether a change in a "related service" such as transportation should be characterized as a change in educational placement, is wholly speculative. Although we conclude that appellants' claim has no merit, the issues presented under the EHA are of sufficient importance that we address them in full.[1] We will affirm the judgment of the district court.

### I.

Appellants, David and Mania DeLeon, have sued for themselves and on behalf of their son, Lorin. Lorin is a profoundly retarded child and, as such, is entitled to a free program of special education under the EHA. In 1980, when Lorin attained school age, the defendant Susquehanna Community School District (the "District") placed him in a special education program at Clarks Summit, Pennsylvania. Appellants objected, and expressed a preference for the Bell School in Kirkwood, New York,

---

* Honorable H. Lee Sarokin, United States District Judge for the District of New Jersey, sitting by designation.

1. The Supreme Court has recently held that the provisions of the EHA are the exclusive means by which a handicapped child may assert the right to a free, appropriate public education. *Smith v. Robinson*, —— U.S. ——, ——, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). The DeLeons' constitutional claims are thus subsumed in their EHA claims.

Given our disposition of the case, we need not reach the question whether damages would be available to a plaintiff where a school district violated § 1415(e)(3). The EHA does not provide an explicit cause of action for a parent aggrieved by the failure of a school district to comply with § 1415(e)(3). The plaintiffs claimed damages under 42 U.S.C. § 1983; we/

note, however, that the Supreme Court has recently held that the EHA remedies are not to be supplemented by means of § 1983. *Smith v. Robinson*, —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Although two circuits have held that § 1983 is available to fill in the "gap" in the EHA remedies through which this case might otherwise fall, *see Quackenbush v. Johnson City School Dist.*, 716 F.2d 141 (2d Cir.1983); *Hymes v. Harnett County Board of Education*, 664 F.2d 410 (4th Cir.1981), we believe that the holdings of these cases have been called into serious question by *Smith v. Robinson*. However, we need not decide this issue. Nor do we express an opinion as to whether an "implied right of action" under the EHA might be available to fill the gap, or whether such a right of action would include a damage remedy.

on the grounds that the longer travel time necessary to reach Clarks Summit might be harmful to Lorin.[2] Due process procedures were instituted under the EHA, and a hearing was conducted by a hearing officer who upheld the placement at Clarks Summit. Mr. and Mrs. DeLeon then appealed to the Pennsylvania Secretary of Education, and the District agreed to an interim placement at the Bell School. In April 1981, the Secretary overruled the hearing officer and directed that the parties seek a placement closer to Lorin's home. After further negotiation, the District approved a placement at the Bell School.

Subsequently, the Bell School was moved to Apalachin, New York, which eliminated its travel time advantage over Clarks Summit. At the urging of the Pennsylvania Department of Education, the District instituted due process proceedings to have Lorin transferred to Clarks Summit. Appellants agreed to the transfer, provided that Mrs. DeLeon continue to provide his transportation from door to door; Mrs. DeLeon had driven Lorin to Apalachin during his placement at the Bell School, and had been paid $75.91 per day by the District to do so. The District also agreed, and the arrangement was made part of Lorin's Individual Educational Program (IEP) for the 1982–83 school year.[3]

In March 1983, an IEP was agreed on for Lorin for the 1983–84 school year. This IEP did not specify the mode of transportation. In early August 1983, the District solicited bids for a combined transportation run involving Lorin and several other children in special education programs. The

other children attended the Lourdesmont School, which was located about two miles from Clarks Summit. The DeLeons bid on the "combined run," and also objected to Lorin's inclusion in the run. The DeLeons were not the low bidders and were not awarded the contract.[4] When the school year started, they refused to allow Lorin to be transported with the other children, in spite of the fact that Lorin would be driven directly to school in the morning and would only have to make one brief stop in the afternoon to pick up the other children.

The DeLeons objected to the combined run on the ground that the increase in transportation time on the trip home would be detrimental to Lorin's education. The school district treated the DeLeons' letter of objection, dated August 19, 1983, as a request for a due process hearing. The District forwarded the letter to the Department of Education and requested that a "due process" hearing be held. However, the District did not consider the change in the mode of transportation to be a change in "educational placement," and thus did not feel bound to continue Lorin's previous mode of transportation pending the outcome of the hearing.

On the first day of the new school year, September 7, 1983, the DeLeons filed a complaint in the district court for the Middle District of Pennsylvania. The complaint alleged that the new method of transportation was in conflict with Lorin's IEP, and thus that the District had violated the "stay put" provision, 20 U.S.C. § 1415(e)(3).[5] The complaint requested relief under the EHA and 42 U.S.C. § 1983,

---

**2.** The DeLeons reside in the northern tier of Pennsylvania close to the New York border.

**3.** Under the EHA, the special education program of a handicapped child must be formalized in an IEP. Parental involvement in this process is one of the protections provided by the EHA. Transportation is explicitly enumerated as a "related service" under the EHA, and thus is a proper subject for inclusion in an IEP. In our view, presence or absence of a particular service in the IEP is relevant to the question whether a particular service should be considered part of a child's "educational placement" for purposes of the "stay put" provision, because

it reflects the importance attached to that service by the parents and the District.

**4.** The "run" was awarded to Mr. and Mrs. Richard Johnson. Mrs. Johnson, a trained special education matron or aide, was to be available to assist students during the ride while her husband drove.

**5.** The complaint also alleged that, because the DeLeons could not afford to transport him to school without the $75.91 daily reimbursement, the change in placement would result in Lorin being deprived of his education altogether.

alleging violations of section 1415(e)(3), the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the "due process of law guaranteed by the Constitution of the United States including but not limited to the Fourteenth Amendment," and the equal protection clause. Appellants sought a preliminary and final injunction to prevent the District from making the change in transportation prior to a due process hearing, as well as damages.

In support of their contention that Lorin would be harmed by the new method of transportation, the DeLeons submitted an affidavit from Dr. Freda Brown, an Assistant Professor of Education at the State University of New York at Binghamton. Dr. Brown is a specialist in the education of severely and profoundly impaired children. Based on her evaluation of Lorin, Dr. Brown stated that "lengthy travel, that is, travel of 50 minutes to 1 hour, will exacerbate [Lorin's tendency to become agitated while traveling] and have a debilitating effect on his ability to benefit from his education." An affidavit from Mrs. DeLeon was also submitted, along with evidence concerning the length of Lorin's school day and the travel times on the original and combined runs. The evidence indicated that the trip from the DeLeon driveway directly to Lorin's school took between 50 and 60 minutes, and that the combined run followed the same route as the original run, and that the return trip on the combined run, including the stop to pick up the other children at Lourdesmont School, took 60 to 70 minutes.

After a hearing, the district court denied the DeLeons' request for a preliminary injunction. In a brief written opinion, the court found that the combined run would not be so harmful to Lorin as to amount to "irreparable injury" and that the DeLeons had not shown a probability of success on the merits, given the limited scope of review over decisions concerning special education placement. *See Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). On the latter question, the court concluded that, because the state procedures had not yet been completed on the question of Lorin's transportation, it could not review the adequacy of those procedures and should not pass judgment on the merits until the state had completed its review. Then, because both parties indicated that they were relying on the affidavits and memoranda submitted up to that point, the district court consolidated the hearing on the preliminary injunction with the trial on the merits, Fed.R. Civ.P. 65(a)(2),[6] and ordered the case closed.[7] The DeLeons appealed.

## II.

The threshold question is whether the change in Lorin's method of transportation amounts to a change in "educational placement." Section 1415(b)(2) entitles parents to "an impartial due process hearing" with regard to any complaint presented to a school district concerning the treatment of their special education child. Subsection (e)(3) of the same section provides that "[d]uring the pendency of any proceedings conducted pursuant to this section ... the

---

**6.** In support of this action, the court cited *Fenstermacher v. Philadelphia National Bank*, 493 F.2d 333 (3d Cir.1974). As the concurrence forcefully points out, under *Fenstermacher*, a preliminary injunction hearing may be combined with a hearing on the merits, pursuant to Fed.R.Civ.P. 65(a)(2), if it is accompanied by notice to the parties sufficient to enable them to present all of their evidence. 493 F.2d at 337. Although it is not clear what type of notice was given in this case, the district court believed that the parties had presented all of their evidence and no party objected to the consolidation either in the district court or on this appeal. Accordingly, the question whether the district

court properly consolidated the preliminary injunction hearing with the trial on the merits is not presented, and we need not address it.

**7.** The situation before us is somewhat unusual. The district court never entered judgment for the defendants, but merely ordered the case closed after a trial. *See supra* note 5. There is no problem with appellate jurisdiction, however, since the court denied the requests for preliminary and permanent injunctions. For purposes of scope of review, we will treat this case as if the district court had directed a verdict for the defendants.

child shall remain in the then-current educational placement . . . ." If the change in transportation which the District has sought to impose on Lorin is not a "change in educational placement" within the meaning of subsection (e)(3), then the District was free to proceed with the change before completing the mandated due process hearing. If, however, there was a change in educational placement, the actions of the District may have violated the EHA.

The question of what constitutes a change in educational placement is, necessarily, fact specific. The EHA provides for "due process" hearings in order to involve parents in important educational decisions affecting their children. *See Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982); *Smith v. Robinson,* — U.S. —, —, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). Thus, in determining whether a given modification in a child's school day should be considered a "change in educational placement," we should focus on the importance of the particular modification involved.

Unfortunately, the two leading cases on the subject involve an entirely different problem: whether a decision concerning the closing of a facility, which by definition involves not only the interests of a large number of children but also a substantial fiscal policy question for the school district, should be outside the hearing requirement of section 1415(b)(2) and the "stay put"

provision of section 1415(e)(3), because the questions involved are broad "policy" decisions rather than individual choices concerning particular children.[8]

In this case, the decision involved is one that affects the educational program of an individual child. We believe that, given the remedial purposes of the Act, the term "change in educational placement" should be given an expansive reading, at least where changes affecting only an individual child's program are at issue.[9] The educational program of a handicapped child, particularly a severely and profoundly handicapped child such as Lorin, is very different from that of a non-handicapped child. The program may consist largely of "related services," such as physical, occupational, or speech therapy. The basic constituent elements of the program will be incorporated in the IEP, and the elimination of one of those elements may significantly affect the ability of the child to learn.

■ It is clear that the "stay put" provision does not entitle parents to the right to demand a hearing before a minor decision alters the school day of their children. The touchstone in interpreting section 1415 has to be whether the decision is likely to affect in some significant way the child's learning experience. In some areas it may be possible to draw bright lines: for instance, replacing one teacher or aide with another should not require a hearing before the

8. In *Concerned Parents v. New York City Board of Education,* 629 F.2d 751, 754 (2d Cir.1980), the court dealt with this problem by holding that because the children previously enrolled at a school which was closing were transferred to similar, although less "innovative," programs in other schools, the transfers did not affect the "general educational program in which a child . . . is enrolled," and thus were not changes in educational placement. Were we to apply the Second Circuit's holding in the present context, the change involved would clearly fall outside the ambit of the "stay put" provision. In *Tilton v. Jefferson County Board of Education,* 705 F.2d 800 (6th Cir.1983), the court was also confronted with a school closing, but distinguished *Concerned Parents* on the grounds that "the programs at alternative schools are not comparable" to the program at the facility being closed. *Id.* at 804. The court went on to hold that, in spite of the fact that a "change in educational

placement" was taking place, section 1415(e)(3) would not apply to "forestall implementation of a fiscal policy decision." The court in *Tilton* believed that Congress had not intended to interfere with such decisions, traditionally the concern of local school officials, by requiring hearings at which parents, concerned solely with their own child's program, could interfere with resource allocation decisions designed to provide the best possible education for all of the children of a district. *Id.* A heavy judicial hand in that kind of case, possibly requiring school districts to raise substantial funds by taxation or transfer of appropriations, raises substantial and sensitive separation of powers problems. *See generally* G. Frug, The Judicial Power of the Purse, 126 U.Pa.L.Rev. 715 (1978).

9. *Cf. supra* note 8.

change is made. On the other hand, there are areas where such bright lines will be impossible to draw.

■ We believe that transportation services is such an area. Under some circumstances, transportation may have a significant effect on a child's learning experience.[10] Minor changes in the daily transportation routine, however, will not generally have such an impact on the child's learning experience, even when the child is severely handicapped. In this case, transportation by a parent was replaced with transportation by a stranger, and transportation alone was replaced with transportation as part of a group of children. There was also a slight increase, of approximately ten minutes, in the length of time to be spent in transit, but only on the way home from school.

We have taken into account the affidavits of Mrs. DeLeon and Dr. Brown which do not indicate that these *changes* will have a substantial, detrimental impact on Lorin's education. Mrs. DeLeon's affidavit evidences her concern with Lorin's safety on the trip, and with the problems which could arise from Lorin's being transported with other children. But her concerns about Lorin's safety are stated as conclusions only, and the school district had required that two adults provide the transportation, thus allowing one to be available to assist the children while the other drove. Dr. Brown's affidavit explained the problems which a long travel period posed for Lorin's education, but did not suggest that a small increase in travel time on the way home, which is all that is involved in making Lorin part of the combined run, would make a

difference.[11] Thus, Dr. Brown's affidavit does not provide support for the DeLeons' position. On this record, we do not believe that the change in Lorin's transportation to and from school can be said to amount to a change in "educational placement" within the meaning of 20 U.S.C. § 1415(e)(3).

### III. CONCLUSION

Since the change in Lorin's method of transportation does not amount to a change in "educational placement" within the meaning of the EHA, the District did not violate that Act by making the change without prior due process procedures. The DeLeons, therefore, have not established a claim for relief against the school district. Accordingly, the judgment of the district court will be affirmed.

SAROKIN, District Judge, concurring.

I concur in the majority's ruling affirming the district court's denial of appellants' application for a preliminary injunction, but my concurrence extends to the entry of final judgment against appellants *only* because of appellants' failure to raise on appeal the issue of the district court's error in consolidating the disposition of the application for a preliminary injunction with the trial on the merits. I recognize that such consolidation is expressly permitted by Federal Rule of Civil Procedure 65(a)(2). However, as the Supreme Court has recently stated:

> Before such an order [consolidating an action on the merits with a hearing on an application for a preliminary injunction] may issue ... the courts have commonly required that "the parties should normal-

---

**10.** For instance, if a child is transported along with other children, the presence of a trained non-driving aide to attend to the children's needs in transit may be an essential part of the educational program. Severely and profoundly impaired children are often seizure-prone or hyperactive or aggressive in behavior. In addition to providing for the health and safety of the children on the bus, the presence of an aide to deal with such problems may be essential to the very purpose of transporting the children, because without an aide the driver would have to stop to deal with such problems, and the children might frequently be late for school. More-

over, the sad reality is that, especially in rural areas where there are relatively few children in need of highly specialized programs such as Lorin's, appropriate education may not be available close to home: at the same time, providing a reasonable travel time may not be the top priority of financially pressed school districts.

**11.** Notwithstanding Dr. Brown's affidavit, the DeLeons have not contended that the 50–60 minute original run presented a problem for Lorin.

ly receive clear and unambiguous notice either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases."

*University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (citations omitted). The rationale for such procedure is that, in the preliminary injunction context, "the parties generally will have had the benefits neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Id.* at 396, 101 S.Ct. at 1834.

Indeed, such procedure takes on a constitutional dimension. As the Court of Appeals for the Fourth Circuit has stated, addressing a situation in which the trial court first announced its intention to consider action under Rule 65(a)(2) at the conclusion of trial:

> To grant judgment on the merits under Rule 65(a)(2) without any notice of such intention until the conclusion of the evidentiary hearing on the motion for a preliminary injunction and to grant such judgment on an "intimated" motion to dismiss, treated without prior notice as a motion under Rule 56, all without requiring answers to interrogatories or permitting any discovery in a case which, on the pleadings at least, is not frivolous, comes perilously close to a violation of due process.

*Gellman v. State of Maryland,* 538 F.2d 603, 606 (4th Cir.1976).[1]

The Third Circuit has adopted this stringent standard for application of Rule 65(a)(2). In *Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333, 337 (3d Cir.1974), this court stated that "consolidation ... must be accompanied by notice to the parties, either before or after the commencement of the hearings, sufficient to enable them to present all evidence." Affirming the district court's consolidation where the lower court opinion had stated that the parties agreed that no additional evidence would be introduced were there to be a trial on the merits, and where the plaintiff had failed to object to the proposed consolidation, himself submitting a proposed final order after the preliminary injunction hearing, the court nevertheless went on to say:

> It would be advisable in the future for district courts, when contemplating consolidation of the trial of the action on the merits with the hearing of an application for a preliminary injunction, promptly to notify counsel and request an affirmative, on the record, response, especially where jury trial rights may be involved.

493 F.2d at 337.

In this matter, the court below entered an order even dated with its opinion denying plaintiffs' application for injunctive relief, consolidating the preliminary injunction application with the trial and closing the case, essentially entering judgment for defendants.[2] No notice was given the parties; indeed, this was a case in which the court apparently decided to consolidate the hearing on the application for a preliminary

---

**1.** *See also Paris v. U.S. Dept. of Housing and Urban Development,* 713 F.2d 1341, 1345 (7th Cir.1983); *Consumers Union of the United States v. Consumer Products Safety Commission,* 561 F.2d 349, 356 n. 33 (D.C.Cir.1977) (citing cases); *Acha v. Beame,* 531 F.2d 648, 651 (2d Cir.1976); *Penn v. San Juan Hospital,* 528 F.2d 1181, 1187 (10th Cir.1976); *Santiago v. Corporacion de Renovacion Y Vivienda de Puerto Rico,* 453 F.2d 794, 797–98 (1st Cir.1972); *Puerto Rican Farm Workers v. Eatmon,* 427 F.2d 210, 211 (5th Cir. 1970). *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2950 at 486–93 (1973 and 1983 Supp.); 7.2 Moore *Federal Practice* ¶ 65.04[4] (1984).

**2.** The court's ruling to this effect was embodied in a footnote to its order, which footnote stated:

> Because the parties indicated at, and directly after, the conference in Chambers that they were relying on the affidavits and memoranda that had been submitted up to that point and that there would be no further submissions from either side, we think it appropriate to consolidate the instant motion with the trial on the merits of this action. *See Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333 (3d Cir.1974). Moreover, any further submissions would necessarily be that which is being presented in the pending administrative hearing.

injunction with the trial on the merits *after* the hearing itself. Although it is permissible under the Rule to announce such consolidation after the *commencement* of a hearing, "[t]he order cannot come so late in the hearing that it is impossible for the parties adequately to develop their entire case." *Warehouse Groceries Management, Inc. v. Sav-U-Warehouse Groceries, Inc.*, 624 F.2d 655, 658 (5th Cir.1980) (notice after hearing held inadequate). Unlike the situation in *Fenstermacher,* the district court in this case did not and apparently could not represent that the parties would introduce no more evidence were there to be a trial on the merits. Rather, the court merely indicated that the parties had agreed that there would be no additional submissions for purposes of the preliminary injunction application, and that the parties would rely on the affidavits and memoranda already submitted. In fact, it appears that the court's ruling was based entirely upon the papers. *See* Appellant's Brief at 7.

Appellants were thus prejudiced by being deprived of an opportunity to present their case.[3] This is all the more so in that the primary basis for the court's denial of appellants' application for injunctive relief was that there had been no showing of irreparable harm. While I do not disagree with that finding, it provides no basis for dismissal of this case, especially because there remains the possibility that damages may be available. *See* Majority Typescript at 150 n. 1. Moreover, to the extent that the district court's decision was based upon appellants' failure to show a likelihood of success on the merits, such failure does not mean that "there was no conflict of material fact which justified the holding of a full trial on the merits." *See, e.g., United States ex rel. Goldman v. Meredith,* 596 F.2d 1353, 1358 (8th Cir.1979). Given the opportunity, appellants might well have marshalled additional facts to support their conclusion that the change in Lorin's mode

of transportation constituted a change in educational placement for purposes of the EHA, a conclusion which the majority recognizes as conceivable. Majority Typescript at 153–154. The district court's summary disposition of this matter precluded such further evidence.

Normally, this would constitute reversible error. However, because I agree with the majority that appellants failed to raise this issue on appeal or to object to it below, by motion for reconsideration or otherwise, I concur.

---

[3] Some courts require a showing of prejudice in order to reverse on the basis of improper consolidation. *See, e.g., Holly Sugar Corp. v. Goshen County Cooperative Beet Growers,* 725 F.2d

564, 568 (10th Cir.1984); *Glacier Park Foundation v. Watt,* 663 F.2d 882, 886 (9th Cir.1981), citing *Eli Lilly & Co. v. Generix Drug Sales, Inc.,* 460 F.2d 1096, 1106 (5th Cir.1972).