Carla R. HELMS, Plaintiff-Appellee,

v.

INDEPENDENT SCHOOL DISTRICT NO. 3 OF BROKEN ARROW, TULSA COUNTY, OKLAHOMA, Defendant-Appellant.

Oklahoma State Department of Education, Defendant.

No. 83–2233.

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1984.

Rehearing Denied Jan. 15, 1985.

Tom Price, Tulsa, Okl., for plaintiff-appellee.

Ronald L. Day of Fenton, Fenton, Smith, Reneau & Moon, P.C., Oklahoma City, Okl., for defendant-appellant.

Before LOGAN and McWILLIAMS, Circuit Judges, and BOHANON, Senior District Judge.[*]

BOHANON, Senior District Judge.

This case arose under the Education for All Handicapped Children Act of 1975, 20 U.S.C. Secs. 1400, et seq. (1982). The appeal is brought by Independent School District No. 3 of Broken Arrow, Tulsa County, Oklahoma (hereinafter "school district") from a final Judgment and Order of the United States District Court for the Northern District of Oklahoma. The Oklahoma State Department of Education (hereinafter "State") was a defendant before the district court but has not appealed.

This case commenced when the parents of the appellee, Carla Helms, requested an administrative due process hearing pursuant to 20 U.S.C. Sec. 1415(b)(2) in March of

1982. At that time Carla was enrolled in the appellant school district and classified as a "Trainable Mentally Handicapped" student. Her mother had been informed, however, that the school district would not allow Carla to attend school after the end of the 1981–82 school year. The due process hearing was requested to challenge this termination of educational services.

The hearing was held before a Hearing Officer appointed by the Oklahoma State Department of Education on April 16, 1982. Carla was represented by counsel who presented testimony and documentary evidence as did the school district. The Hearing Officer's decision was issued in June of 1982. It concluded that the school district was not required to provide education to handicapped students from 18 through 21 years as a general policy, but ordered the school district to provide two additional years of education in this particular case because certain records admitted at the hearing indicated that Carla was in the tenth grade at the time of the hearing. Although the school board maintains that these records were the result of a mistake, the Hearing Officer found that they had led Carla's parents to expect two more years of education and that Carla was entitled to two more years of education even as a non-handicapped child in the tenth grade would be.

The school district appealed the Hearing Officer's decision to the Oklahoma State Department of Education which appointed an Appeal Team Review Board. After receiving the record and briefs from both parties, but without any formal hearing, the Appeal Team, on July 20, 1982, reversed the Hearing Officer's decision and ordered Carla to be graduated without further education. The Appeal Team gave no reason for its action other than a conclusory assertion that "Broken Arrow Public School System has completed its legal obligation to provide this child with the re-

[*] Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by

designation.

quired minimum number of years of education (12)."

Carla then brought suit in the United States District Court for the Northern District of Oklahoma seeking judicial review of the Appeal Team decision as authorized by 20 U.S.C. Sec. 1415(e) (1982). All parties moved for summary judgment before the district court, and on August 29, 1983, the court granted Carla's motion, setting aside and vacating the Appeal Team's decision and ordering the school district to provide Carla with two additional years of free appropriate public education.

Central to this case is the following portion of the EAHCA found at 20 U.S.C. Sec. 1412 (1982):

In order to qualify for assistance under this subchapter in any fiscal year, a State shall demonstrate to the Commissioner that the following conditions are met:

. . . . .

(2) The State has developed a plan pursuant to section 1413(b) of this title in effect prior to November 29, 1975, and submitted not later than August 21, 1975, which will be amended so as to comply with the provisions of this paragraph. Each such amended plan shall set forth in detail the policies and procedures which the State will undertake or has undertaken in order to assure that—

. . . . .

(B) a free appropriate public education will be available for all handicapped children between the ages of three and eighteen within the State not later than September 1, 1978, and for all handicapped children between the ages of three and twenty-one within the State not later than September 1, 1980, except that, with respect to handicapped children aged three to five and aged eighteen to twenty-one, inclusive, the requirements of this clause shall not be applied in any State if the application of such requirements would be inconsistent with State law or practice, or the order of any court, respecting

public education within such age groups in the State;

The school district claims that the State of Oklahoma falls within the exception provided by subsection (B) by reason of inconsistent state law and practice. Its position on this matter, however, is not entirely consistent. On page 3 of the appellate brief in chief, the school district states: "In Oklahoma both handicapped and non-handicapped students who have received twelve (12) or more years of appropriate public education are not eligible to continue to receive free public education until reaching age twenty-one (21)." This statement is simply false. As the school district's counsel admitted in oral argument, any non-handicapped student who fails a grade in Oklahoma is entitled by law to take that grade over and then, provided he or she passes the second time, proceed through the normal sequence of grades to graduation, receiving as a consequence more than 12 years of public education. Such a child is clearly entitled to a 13th, 14th or further years of schooling depending on how many grades he or she fails.

The school district, however, does not stick with this particular wording to state its position and by page 14 of its brief gives a modified statement of its argument:

A. Under Oklahoma Law Both Handicapped And Non-handicapped Students Between the Ages Of Eighteen (18) And Twenty-one (21) *Who Have Completed Grade 12* Are Not Eligible To Continue Their Education At Public Expense.

(emphasis added). This statement is true, at least with respect to non-handicapped children. The shift from talking about the number of years to talking about numerical grade level makes all the difference. The difference, however, is not sufficient to make the exception created by Sec. 1412(2)(B) applicable. That exception by its terms refers to the "age groups" of children age three to five and eighteen to twenty-one inclusive, not to numerical

grade levels. As may be inferred from what we have already indicated, though the usual age for a non-handicapped child entering his senior year in an Oklahoma high school may be seventeen, children aged eighteen, nineteen or older may nonetheless be entitled under state law to another year of free public education if they have failed one or more grades. Since non-handicapped children in these age groups may be entitled to free public education, the school district may not be heard to say that Oklahoma "State law or practice ... respecting public education within such age groups in the State" is inconsistent with Sec. 1412(2)(B)'s requirement that a "free appropriate public education" be made available to handicapped children within such age groups. Otherwise, we would have to infer an intent on the part of Congress to allow states to discriminate against handicapped children with regard to their *access* to an adequate publicly supported education—an inference plainly contradicted by the legislative history of the EAHCA. *See Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 191–94, 102 S.Ct. 3034, 3042–44, 73 L.Ed.2d 690 (1982).

This interpretation of Sec. 1412(2)(B) is consistent with the corresponding regulation issued by the United States Department of Education and found at 34 C.F.R. Sec. 300.300 (1982), which provides, in pertinent part:

"(a) *General.* Each State shall insure that free appropriate public education is available to all handicapped children aged three through eighteen within the State not later than September 1, 1978, and to all handicapped children aged three through twenty-one within the State not later than September 1, 1980.

(b) *Age ranges 3–5 and 18–21.* This paragraph provides rules for applying the requirement in paragraph (a) of this section to handicapped children aged three, four, five, eighteen, nineteen, twenty, and twenty-one:

. .  .  .  .  .

(2) If a public agency provides education to non-handicapped children in any of these age groups, it must make a free appropriate public education available to *at least a proportionate number* of handicapped children of the same age.

.  .  .  .  .

(5) A State is not required to make a free appropriate public education available to a handicapped child in one of these age groups if:

(i) State law expressly prohibits, or does not authorize, the expenditure of public funds to provide education to non-handicapped children in that age group ..."

(emphasis added). Our examination of the record in this case discloses that the court below had ample reason to conclude that the State of Oklahoma and the school district were not in compliance with this statute and regulation. Indeed, as we will shortly discuss in more detail, the only evidence in the record regarding provision of educational services to handicapped children within the specified age groups indicated that the policy of the school district was to *never* give handicapped children more than 12 years of education regardless of their age. From this and the fact that non-handicapped children regularly receive more than 12 years' public school, it would be appropriate to infer that there were not a proportionate number of handicapped children in these age groups receiving free public schooling.[1]

The school district has cited several Oklahoma statutes, attorney general's opinions and the Regulations of the Oklahoma State Board of Education in its effort to prove that state law and practice is inconsistent with providing free public education to members of the 18 to 21 inclusive age

---

1. Under the provisions of Sec. 1415(e)(2), the school district was entitled, upon request, to have the court below hear evidence in addition to that already placed of record before the State Hearing Officer. The school district failed to

group.[2] We have carefully studied all of these laws and find them irrelevant for the reasons stated above. All these laws establish is that the State of Oklahoma *permits*, but does not require, local school officials to discriminate against handicapped children with respect to the provision of more than 12 years of free public education.[3] Without arguing the semantics of whether a state law that *permits* local authorities to not provide a certain service is truly *inconsistent* with a federal law that requires them to provide that service, we must note that even if state law *forbade* the provision of free public education to handicapped children for more than 12 years, so long as non-handicapped children within the 3 to 5 and 18 to 21 inclusive age groups may be entitled to free public education, there is not the kind of inconsistency contemplated by the exception in Sec. 1412(2)(B). The school district's attempt to justify its actions and policy based upon any other kind of inconsistency between state and federal law is simply in vain, given the Supremacy Clause of the United States Constitution.

As mentioned, the school board attempts to argue that Oklahoma's policy is the same with regard to both handicapped and non-handicapped children in the 18 to 21 inclusive age group in that children in either classification are not entitled to further free public education once they have completed the 12th grade. This argument is a mere sham, given the abundant evidence in the record about the difference in the methods used to determine when handicapped and non-handicapped children are in the 12th grade.

For non-handicapped children there is, of course, a standardized course content with a specific performance level that must be achieved by a student before he can be given a passing grade and so be entitled to proceed to the next-highest grade level. The school district argues that such a standardized education is not feasible, nor required by the EAHCA, for handicapped children. Instead, the EAHCA provides that each handicapped child have an "individualized education program" or IEP tailored to his or her own specific needs and abilities. We agree with the school district that under the EAHCA a handicapped child's progress from grade to grade is to be measured by reference to his or her IEP rather than to a standardized curriculum, *see* 20 U.S.C. Sec. 1401(18)(D) (1982), but we strongly deny that any responsible judge faced with the present record could conclude that the school district does in fact comply with the provisions of the Act in this regard.

Section 602 of the EAHCA, codified at 20 U.S.C. Sec. 1401 (1982), gives the following definition of the IEP:

(19) The term "individualized education program" means a written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents

---

make such a request, however, and did not offer any additional witnesses or exhibits.

**2.** 70 O.S. Sec. 1–114(A) (1981) ("Effective with the school year beginning 1980–81, all children between the ages of five (5) years on or before September 1, and twenty-one (21) years on or before September 1, shall be entitled to attend school free of charge in the district in which they reside."); 70 O.S. Sec. 13–102 (1981); Oklahoma Attorney General Opinion No. 75–300 (Jan. 1976); Oklahoma Attorney General Opinion No. 80–89 (Aug.1980); *Policies and Procedures Manual for Special Education in Oklahoma, 1982,* 2 (1982).

**3.** "... in instances where a trainable mentally retarded child has completed twelve (12) years of special education ... the school board *need not continue providing classes until such child reaches the age of twenty-one (21)*." Oklahoma Attorney General Opinion No. 75–300 (Jan.1976) (emphasis added). "Twelve years of schooling is mandated, additional schooling through age 21 is permissible." *Policies and Procedures Manual for Special Education in Oklahoma, 1982,* 2 (1982).

or guardian of such child, and, whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual *goals*, including short-term instructional *objectives*, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) *appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.*

(emphasis added). This subsection clearly contemplates that a handicapped child's progress in school should be measured by objective, if not standardized, standards. It would make a farce of the clear intent of Congress to interpret this statute as allowing that a handicapped child could fail to meet his or her IEP objectives and yet advance a grade level. Further, it would obviously violate the objectivity requirement of subsection (E) to utilize evaluation procedures that made it impossible for a handicapped child to fail. Again we refer to the CFR section quoted earlier. The requirement of Section 300.300(b)(2) that free public education be given to at least as many handicapped children in the relevant age groups as would be proportionate to the number of non-handicapped children in the same age groups who are receiving free public education, is obviously intended to discourage states and local officials from cheating the handicapped by making it easier for them to complete their courses of instruction than it is for the non-handicapped to complete theirs.

The present case is in fact a classic example of the extreme form this kind of abuse can take. Admitted into evidence before the Hearing Officer was Carla's IEP for the then-current year. The IEP appears to conform to the requirements of the EAHCA: the child's strengths and weaknesses and current achievement levels are listed, some seven "instructional objectives" are set forth together with descriptions of the equipment, materials, and techniques to be used, the person or persons responsible for the objective, the time per day or week alotted to that objective, the projected beginning and ending dates of the course of instruction, and nine columns with the numbers 10 through 90 in increments of 10 for indication of the date on which that percentage of the objective is mastered. On the IEP included in the record, these last columns are completely blank. This would seem to indicate that as of the date of the hearing, three quarters of the way through the school year, no attention whatsoever had been paid to the extent to which Carla was accomplishing her objectives. Indeed, since the school district failed to submit any of Carla's IEP's from previous years (even though it had ample opportunity to do so before the Hearing Officer, the Appeal Team and the District Court) there is little evidence in the record to indicate that Carla's success or failure as measured by her ability to master specific objectives was *ever* considered. In fact the most favorable evidence in this regard for the school district is found on the first page of the only IEP in the record. There, in the upper left-hand corner, the form clearly indicates that during the school year in which the due process hearing was held Carla Helms was in the *tenth,* not the *twelfth* grade, meaning that her progress had been evaluated in previous years, was found unsatisfactory, and she was failed. This grade level was also substantiated by her report cards and a computer printout. The school district claims that this evidence, which makes it seem to have been doing the job mandated by Congress as a condition for the receipt of federal funds, was a mistake.

In fact, the school district claims in its appellate brief that "[t]he Appeal Team Review Board determined that the 'report cards, IEP, and the computer printout indicate[ing] that the child was in the 10th grade,' were 'errors in record keeping.' " This statement is a misrepresentation of

what may actually be found in the record before us. The record discloses that on page 2 of its "Appeal Hearing and/or Review Decision" the Appeal Team summarized, without comment, "Evidence From Facts & Testimony" including the following items:

8. Report cards, IEP, and the computer printout indicated that the child was in the 10th grade. (Transcript pg. 25, 26 & School Exhibit 9)

9. The district concedes errors in record keeping procedures concerning the grade placement of this child. (Transcript pg. 22, 26, 32)

This mere report that the school district *conceded* errors in record keeping is far from a reasoned determination by the Appeal Team that the indications of the 10th grade standing were *in fact* mere errors in record keeping. The truth is that the only thing in the record supporting the school district's assertion that these indications were erroneous is the school district's assertion.

The real reason why the school district has taken this position is shown in the following very revealing excerpts from the testimony before the Hearing Officer of Judy Grass, the school counselor who discovered the "mistake:"

Tom Price: [counsel for Carla Helms] Let's go to the first page of that exhibit. [Carla's IEP] Up in the top left hand corner we have some information as to the child's name, the school name, grade and all of that. What is the grade listed there for this child?

Judy Grass: 10th.

Tom Price: I take it then that she was to be considered a 10th grader for the incoming school year. Is that right?

Judy Grass: At that point.

Tom Price: At that point?

Judy Grass: Yes.

Tom Price: Has it changed since then?

Judy Grass: Yes, sir.

Tom Price: Why is it changed? Do you have any idea as to why it would change, you know, does the child....

Judy Grass: Suddenly jump a year? ..... We were asked to review the records. At that time I did not have all of the records on where she had been. And we were asked later to go in depth and figure out exactly *how many years* she had been in school.

.    .    .    .    .

Judy Grass: ... In a normal program I would assume that the secondary level program would be the 12th grade. This is not what I would consider a normal secondary level program. If somebody came up to me and talked about the secondary student, I would not assume that it would be a TMH student. So, in this case, the secondary program from that I understand *is to be through the 12 years of school.*

.    .    .    .    .

Ronald Day: [counsel for the school district] Do you have an explanation as to why the 9th grade is on that [report card for the previous year]?

Judy Grass: No.

Ronald Day: In your opinion, is it a mistake?

Judy Grass: Yes. Again, as I stated, we were just asked to research this year and my files were not complete until just recently. Some of these documents were still at special services. They had not given them to me. And, when they said would you please research, then, I found out *she had been in school for 12 years.*

(Due Process Hearing Transcript at 16, 17, 22) (emphasis added). This makes it obvious that the school district's attempt to qualify under the exception in Sec. 1412(2)(B) by rephrasing its claim to talk in terms of grade level rather than the clearly discriminatory number of years standard is just so much doubletalk. For the school district twelfth grade *is* the twelfth year and vice versa where a handicapped child is concerned, and objective criteria of evaluation be damned. We agree whole heartedly with the district court's finding that:

The defendants appear to argue that a handicapped child is simply moved from grade to grade without consideration of what benefit the child has received or without regard to the child's capabilities and potential to further benefit from the educational experience after the twelve years have expired.

The school district has ardently protested that the reference by the court below to the benefit Carla might receive from additional schooling indicates that that court used an erroneous standard in determining the school's obligation to provide Carla with additional education, citing *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). This argument is at best a diversionary tactic in the school district's meritless case and we need not examine in detail its curious assertion that an educational program that, in effect, required no more than the passage of time for its successful completion was somehow "appropriate" for Carla under the EAHCA. We would, however, observe that it was counsel for the school district who first suggested in the hearing before the court below that Carla's alleged inability to derive benefit from further education provided some sort of justification for the school's decision to terminate her schooling at the end of twelve years. (*See* ROA Vol. III at 30). We see nothing in the district court's discussion of this matter that does not amount to a very appropriate and thorough rejection of this suggestion.

We have considered the rest of the school district's arguments and find them to be without merit. The decision of the district court is affirmed in all respects.

Affirmed.