**Seymour WEXLER and Daisy Wexler, individually and on Behalf of their child, Douglas Wexler, Appellants,**

v.

**WESTFIELD BOARD OF EDUCATION, Appellee.**

**No. 84–5886.**

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 1985.

Assigned Jan. 6, 1986.

Decided Feb. 19, 1986.

Rehearing and Rehearing In Banc Denied March 18, 1986.

---

William D. Peek (argued), Nichols, Thomson, Peek & Meyers, Westfield, N.J., for appellee.

Ralph Neibart, (argued), West Orange, N.J., for appellants.

Before SEITZ, WEIS, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The Wexlers appeal the judgment of the district court dismissing their claim for reimbursement of expenses incurred in sending their son, Douglas, to a series of private schools while they contested the Westfield Board of Education's evaluation of their son's handicap and proposed educational placement. They also appeal the denial of attorney's fees incurred in the proceedings challenging those placements. We have jurisdiction under 28 U.S.C. § 1291.

### I.

Douglas Wexler was identified as a handicapped child in 1968 and placed at the Midland School by the Westfield New Jersey Board of Education. In 1972, further tests were conducted by outside experts and Westfield's Child Study Team, the body responsible in the first instance for evaluating handicapped students and recommending and making available "a free appropriate public education" as required by the Education of All Handicapped Children Act (EAHCA), 20 U.S.C. § 1400 *et seq.* *See* N.J.Stat.Ann. §§ 18A: 46–3, 46–5, 46–5.1 (West 1968 & Supp.1985); N.J.Admin. Code § 6:28–1.3. As a result of the 1972 evaluation, Douglas was reclassified as mentally-retarded educable, and an Individualized Educational Program (IEP) was developed. The Child Study Team recommended placement in the Intermediate Educable Class at the Tamaques School.

The Wexlers objected to the change in classification and placement. They obtained further medical evaluations at Westfield's expense, and kept Douglas at Midland, paying the tuition themselves.

The ensuing dispute, which eventually resulted in this action, involved frequent

retesting and reevaluations by the Child Study Team as well as frequent resort to outside experts by the Wexlers. In 1975, the plaintiffs filed a petition with the Commissioner of Education seeking administrative review of the 1972 reclassification decision. The Wexlers contended that Douglas was not mentally retarded but neurologically impaired and that the Child Study Team's classification and proposed placement were therefore erroneous. The Wexlers never investigated the Tamaques program, however, or compared it to the program at Midland. We will not detail the history of the state proceedings except to note that administrative decisions were several times vacated and the case remanded because the proceedings did not comport with the due process requirements of the EAHCA.

A proper due process hearing was finally held before an administrative law judge, who rendered his decision on June 9, 1983. In the period between the filing of the petition in 1975 and the hearing in 1983, several important events occurred. In 1976, on the basis of further evaluations, the Child Study Team modified its classification to "Multiply Handicapped: Primary—Mentally Retarded-Educable; Secondary—Neurologically Impaired," but did not change its recommended placement.

By 1980, the Wexlers had unilaterally transferred Douglas to the Maplebrook School. On the basis of tests and examinations conducted in late 1980, the Child Study Team reclassified Douglas in February 1981 as "Neurologically or Perceptually Impaired: Perceptually Impaired" and recommended placement at Maplebrook with costs to be assumed by Westfield. An IEP was developed and agreed upon on March 11, 1981, and revised in September, 1981. Pursuant to that IEP, Douglas was graduated from Maplebrook School in the spring of 1982 and received a diploma from the Westfield Public Schools, at which point Westfield contends that its responsibility for Douglas' education terminated. In September 1982, the plaintiffs unilaterally placed Douglas in the Summit Collegiate Studies Center in Jerusalem, Israel.

While the original petition filed with the Commissioner of Education encompassed only the 1972 decision, the Wexlers' claims for reimbursement for tuition, transportation, legal fees, and interest before the ALJ encompassed the entire period between 1972 and the 1981 reclassification, plus the period between Douglas' graduation and the hearing, during which time he was at the school in Jerusalem.

The ALJ upheld the pre-1981 actions of the school board, including its classifications and proposed placements, and found that the Wexlers were not entitled to reimbursement for that period because they had voluntarily chosen not to avail themselves of the "free, appropriate public education" properly made available to them by Westfield. He also found that since the Wexlers had unilaterally enrolled Douglas in the Summit School without objecting to the 1981 IEP, which called for graduating Douglas and issuing him a diploma, they were not entitled to reimbursement for Douglas' post-graduation education. Finally, he found that under New Jersey law, the Wexlers were not entitled to reimbursement of legal fees.

II.

Following the ALJ's decision, the Wexlers filed this action in the United States District Court seeking relief under the EAHCA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the New Jersey statutes relating to special education, N.J.Stat.Ann. §§ 18A: 46–1 *et seq.* Section 1415(e)(2) of the EAHCA explicitly grants jurisdiction to the district court over civil actions contesting the findings and decisions made by state administrative agencies with respect to "complaints ... relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E).

The district court conducted an independent review of the evidence amassed in the

state proceedings, held oral arguments and received some new evidence. It accepted and agreed with the ALJ's findings and denied all relief sought by the Wexlers. Based on the record, the district court found that Westfield made available a free appropriate public education for the school years between 1973 and 1981 and that the parents voluntarily refused to avail themselves of the offer. In addition, it found that Douglas was properly graduated and given a diploma from the Westfield Board of Education and that Westfield's responsibility for Douglas' education terminated at that point. The court therefore denied plaintiffs reimbursement for tuition and expenses.

The district court rejected the Wexlers' argument that Douglas' "current placement" in 1972 was the Midland School and that they had a right under section 1415(e)(3) of the EAHCA to have him remain there until a final disposition of their challenge was made. It found that it was reasonable for Westfield to consider Douglas' then current placement to be the Tamaques School and to have viewed the Wexlers' decision not to investigate or enroll their son in the program offered their son at the Tamaques School as a withdrawal of their son from the Westfield Public School system. Thus, the court found that the plaintiffs were not entitled to reimbursement under the "stay put" provision, see DeLeon v. Susquehanna Community School District, 747 F.2d 149, 150 (3d Cir. 1984), of the EAHCA. Finally, the court held that the plaintiffs were not entitled to attorney's fees, since the EAHCA does not provide for attorney's fees, and plaintiffs could in no way be considered prevailing parties under the Civil Rights Act or the Rehabilitation Act.

The Wexlers' appeal to this court may be best categorized as presenting the following grounds for reversal: first, the district court employed an improper standard in reviewing the state administrative proceedings and in making its own determinations. Second, a preponderance of the evidence supports their view that Douglas was improperly classified and placed by Westfield. Third, Douglas' "then current placement" should be considered the Midland School rather than the Tamaques School. Finally, they claim that under the EAHCA Westfield is responsible for Douglas' education until he reaches twenty-one years of age and that Westfield's responsibility therefore did not terminate with Douglas' graduation. The Wexlers claim that the above grounds support their claims for reimbursement; in addition, they challenge the denial of their claims for attorney's fees.[1]

### III.

At the outset, we must address the question of our standard of review. The standard of review of the school board's decisions and the state administrative proceedings by the district court is now well settled. Section 1415(e)(2) of the EAHCA states that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

In Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982), the Supreme Court interpreted that standard, stating:

[t]he provision that a reviewing court base its decision on the "preponderance

---

1. On appeal, plaintiffs appear to have abandoned any separate arguments based on section 1983 or section 504 of the Rehabilitation Act, and we decide this case under the EAHCA and cases interpreting it. In any case, under the circumstances of this case, the EAHCA is the exclusive remedy for the injuries claimed. See Smith v. Robinson, — U.S. —, 104 S.Ct. 3457, 3468–70, 3471–74, 82 L.Ed.2d 746 (1984); see also, DeLeon v. Susquehanna Community School District, 747 F.2d 149, 150 n. 1 (3d Cir.1984). Such a disposition of the non-EAHCA claims also disposes of the claims for attorney's fees, since attorney's fees are not available under the EAHCA. See Smith v. Robinson, supra.

of the evidence" is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought. The fact that § 1415(e) requires that the reviewing court "receive the records of the [state] administrative proceedings" carries with it the implied requirement that due weight shall be given to those proceedings.... [A] court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the state complied with the procedures set forth in the Act? And, second, is the individualized educational program reasonably calculated to enable the child to receive educational benefits?

■ Where, as here, both the standard of review employed by the district court and its decision on the merits are challenged, we think *Rowley* conditions our standard of review as well as the district court's. In analyzing whether the district court applied the correct standard, we determine whether it independently reviewed the record and heard any requested additional evidence as required by the statute. We then determine whether the district court evaluated that evidence in terms of the substantive standards embodied in *Rowley's* twofold inquiry, i.e., did the district court ask and answer the *Rowley* questions? If the district court answered the *Rowley* questions based on a preponderance of the evidence, then it employed the correct standard.[2]

■ Our standard of review of the district court's decision on the merits, i.e., did the district court answer the *Rowley* questions correctly, is likewise colored by *Rowley*. We exercise plenary review over the district court's conclusions of law, and employ a clearly erroneous standard of re-

view over the court's findings of historical fact. The inquiries directed by *Rowley* are mixed questions of fact and law. In deciding whether the district court has correctly answered those questions, the issue of whether the district court has properly applied *Rowley's* substantive rules is subject to our plenary review. *See Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 501, 104 S.Ct. 1949, 1960, 80 L.Ed.2d 502 (1984) (clearly erroneous standard of review of factual findings "does not inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and fact"). However, our review, while plenary, must be conducted within the general framework of deference to state decision-makers dictated by the EAHCA and *Rowley* itself. Courts must evaluate a classification and IEP in light of "Congress' express efforts to place on local and state educational agencies the primary responsibility for developing a plan to accommodate the needs of each individual handicapped child." *Smith v. Robinson,* 104 S.Ct. at 3469; *see also DeLeon v. Susquehanna Community School District,* 747 F.2d 149, 152 (3d Cir.1984) (noting "the limited scope of review over decisions concerning special education placement").

■ We first address the Wexlers' contention that the district court employed an improper standard of review. We analyze the district court's decisions to determine whether it properly considered all the evidence and measured that evidence against *Rowley's* substantive standards. The district court, in a very thorough opinion, analyzed the evidence in a responsible and sensitive fashion. It reviewed all the test results, and all the administrative proceedings, including the transcripts and reports. Its findings are detailed and supported by the evidence. At the same time, it gave appropriate weight to the decisions made by those to whose professional expertise Congress committed the day to day imple-

**2.** There is no contention before us that there were any deficiencies in state procedures. Our analysis of the challenged school board deci-

sions will therefore be concerned with the second of the *Rowley* questions.

mentation of the EAHCA. The district court evaluated each challenged school board action to determine whether it was reasonable in light of the evidence. Since *Rowley* requires that the school board's actions be "reasonably calculated to enable the child to receive educational benefits," 458 U.S. at 207, 102 S.Ct. at 3051, it is plain that the district court applied the correct standard of review.

■ With respect to the district court's conclusions regarding the Wexlers' next contention, i.e., that Douglas was improperly classified and placed prior to 1981, we find no legal errors or clearly erroneous factual findings. While the plaintiffs point to the 1981 reclassification to "neurologically impaired" as a vindication of their longstanding view that neurological impairment was Douglas' primary impairment, we find no error in the district court's conclusion that the reclassification was the result of Douglas' development and maturation, in combination with changes in the applicable regulations and definitions. This is particularly so in light of its specific finding that there was no evidence that Douglas' placement and evaluation reflected bad faith on the part of the Westfield Public School system. We conclude that Westfield's classification and placement were "reasonably calculated to enable [Douglas] to receive educational benefits." 458 U.S. at 207, 102 S.Ct. at 3051. We thus affirm the district court's conclusions that Westfield made available a free appropriate public education within the meaning of the EAHCA during the years 1972–1981 and that the Wexlers voluntarily refused to avail themselves of this offer.

■ The Wexlers' third contention involves the application of a specific requirement of the EAHCA to the underlying facts and thus presents no *Rowley* question. They argue that the Midland School should be considered Douglas' placement at the time of the reclassification in 1972,

relying on 20 U.S.C. § 1415(e)(3) which provides that "[d]uring the pendency of any proceedings pursuant to this section ... the child shall remain in the then current educational placement." If section 1415(e)(3) had been operative in 1972, it would have required that Westfield reimburse the Wexlers for Douglas' expenses at Midland. We agree with the district court that the fact that section 1415(e)(3) did not become effective until 1977 relieves Westfield of any liability for reimbursement. Similar reasoning supports the district court's view that Westfield had no such duty under analogous New Jersey regulations since they did not become effective until 1978. *See* N.J.Admin.Code 6:28–1.9(e).[3]

The Wexlers contend that the district court erred in not applying the law in effect at the time of its decision. In essence, they want retroactive effect given to statutes which contain no provisions warranting retroactive application. We can discern no error in the district court's finding that Douglas' then current placement when section 1415(e)(3) became operative was the Tamaques School, and that the Wexlers are therefore not entitled to reimbursement under that section.

The Wexlers' final substantive complaint is that the district court erred in finding that they were not entitled to reimbursement for Douglas' post-graduation tuition and transportation expenses for the Summit Center in Jerusalem. They contend that section 1412(2)(B) of the EAHCA places on Westfield the responsibility for Douglas' education until he reaches the age of twenty-one. This contention involves a question of statutory interpretation over which we have plenary review. Section 1412(2)(B) of the EAHCA requires the state to provide "a free appropriate public education ... for all handicapped children between the ages of three and twenty-one within the state ... except that, with re-

---

**3.** State statutes and regulations concerning the education of handicapped children may be enforced in suits under § 1415(e)(2) to the extent that they impose higher standards on state or local officials than are required by the EAHCA. *Geis v. Board of Education of Parsippany-Troy Hills,* 774 F.2d 575, 579–81 (3d Cir.1985).

spect to handicapped children ... aged eighteen to twenty-one, inclusive, the requirements of this clause shall not be applied in any state if the application of such requirements would be inconsistant with state law or practice ... respecting public education within such age groups in the state." Department of Education regulations interpret that section to mean that "[i]f a public agency provides education to non-handicapped children in any of these age groups, it must make a free appropriate public education available to at least a proportionate number of handicapped children of the same age." 34 C.F.R. § 300.-300(b)(2) (1984).[4]

At the outset, we note that the district court found that the Wexlers never objected to the issuance of the diploma, to the substance of Douglas' final IEP, or to the forwarding of Douglas' records to the Department of Vocational Rehabilitation for preparation of post graduate planning. They placed Douglas in the Jerusalem school without prior notice to or discussion with the School Board, and only later demanded reimbursement. The record supports those findings. The ALJ agreed with Westfield's position that the Wexlers' unilateral actions were contrary to acceptable procedure.

The district court found no factual basis for plaintiffs' contention that Douglas' IEP had not been completed to the satisfaction of all parties. It also found that Douglas had been properly graduated and given a diploma.

While neither the ALJ nor the district court discussed section 1412(2)(B)'s requirement of some state responsibility for education of handicapped children between the ages of eighteen and twenty-one, it is clear that they assumed that graduation and the issuance of a diploma terminated Westfield's responsibility. The Wexlers, on the other hand, press upon us the theory that the words of the statute create an absolute duty to continue to provide a free appropriate public education until the age of twen-

ty-one. We shall assume that this argument was advanced in the district court.

■ We do not find any such requirement in section 1412. That section and its accompanying regulations make clear that the state is only required to provide post-graduate education for handicapped students to the extent and in the same proportion that it does for non-handicapped students. *See Helms v. Independent School Dist. No. 3,* 750 F.2d 820 (10th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985). In *Helms,* it was shown that the graduation of the handicapped students was a sham designed to terminate the school system's responsibility at the earliest possible moment under circumstances where non-handicapped children were provided further schooling. Handicapped children were passed through from year to year with little if any attention paid to satisfaction of the IEP, while non-handicapped students were held back if they had not satisfied the academic requirements of their grade. Thus, non-handicapped students were provided with schooling past the age of eighteen if they needed it while handicapped students were routinely graduated at eighteen. *See id.* at 824. The court therefore ordered the school board to provide the plaintiff with two additional years of free appropriate public education.

■ There is no such contention here. The district court found that Douglas was properly graduated, i.e., graduated in accord with his IEP which was "reasonably calculated to enable the child to receive educational benefits," *Hendrick Hudson District Board of Education v. Rowley,* 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982), and that the completion of the program set forth by the IEP is analogous to successful completion of graduation requirements for non-handicapped students, *see* N.J.Admin.Code 6:28–2.6(a). In view of those facts, it is plain that requiring Westfield to provide post-graduate education for Douglas "would be inconsistant with State ... practice ... respect-

---

4. New Jersey has regulations that impose a similar requirement. *See* N.J.A.C. 6:28–1.1(c).

**184**

ing public education within such age [group] in the state." 20 U.S.C. § 1412(2)(B).

IV.

The EAHCA provides a comprehensive scheme for furnishing a free appropriate public education to handicapped children, and commits to medical and educational professionals employed by the state the responsibility for setting forth an individualized program for each child. In addition, the EAHCA sets forth procedures whereby parents may monitor the state and local determinations and protest them if they think the determinations are erroneous. Indeed, the EAHCA allows parents who disagree with their child's placement to place the child elsewhere and receive reimbursement in the event that the proposed placement was inappropriate. *See Burlington School Committee v. Dept. of Education,* —— U.S. ——, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). However, that right to reimbursement exists only when the proposed placement was indeed inappropriate as measured by the standards set forth by the EAHCA and accompanying state and federal regulations.

In this case, Douglas received the education his parents thought best. Westfield made available to Douglas the free appropriate education required by the EAHCA and may not be held financially accountable for the Wexlers' decision to educate him elsewhere.

The judgment of the district court will be affirmed.