

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-21-2005

# Montgomery Twp Bd v. S.C.

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1566

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Montgomery Twp Bd v. S.C." (2005). *2005 Decisions.* Paper 984.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/984

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-1566

_____

MONTGOMERY TOWNSHIP
BOARD OF EDUCATION,

                                        Appellant
                    v.

S.C., ON BEHALF OF D.C.


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-04916)
District Judge: The Honorable Stanley R. Chesler

_____

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2005

Before: SLOVITER and FISHER, Circuit Judges,
and POLLAK,* District Judge.


_____

OPINION OF THE COURT

_____

(Filed: June 21, 2005)

_____

        *Honorable Louis H. Pollak, Senior District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, District Judge:

This appeal concerns a claim for tuition reimbursement under the Individuals with Disabilities Education Act ("IDEA"), 29 U.S.C. § 1400 *et seq*. Appellant Montgomery Township Board of Education ("the Board") challenges the District Court's determination that the Board failed to offer the free and appropriate public education required by IDEA to appellee D.C., a student under its jurisdiction, and that the Board should therefore be required to reimburse D.C.'s parents for the cost of his education at a private school. For the reasons stated herein, we will affirm the judgment of the District Court.

I.

Because we write for the benefit of the parties, we will not recount the facts of the case in great detail. Although the parties have been involved in several additional disputes over other aspects of D.C.'s education, this appeal concerns the Board's proposed individualized education program ("IEP") for D.C.'s fourth-grade year. The Board proposed that D.C. complete fourth grade in his regular home school. Under the proposed IEP, D.C. would be in a class of mostly regular education students, but would receive extra attention and instruction from a special education teacher serving him and five other special education students in the class. D.C. would follow the regular fourth grade curriculum, with the special education teacher providing supplemental assistance at least thirty minutes per day. Under the IEP, D.C. would also receive speech and language therapy twice per week, and weekly group counseling and occupational therapy. Despite

2

technical differences, the IEP largely duplicated services D.C. had already received in practice in earlier years.

D.C's parents objected to the IEP, and unilaterally placed D.C. in a private school for special education students, the Newgrange School. They then sought reimbursement from the Board for D.C.'s tuition at Newgrange.

An administrative law judge presided over a due process hearing to determine whether D.C.'s parents were entitled to tuition reimbursement. After all the evidence had been presented, the administrative law judge recused himself, and was replaced by a second administrative law judge. However, the parties agreed that the second judge should decide the case based on the paper record, without another hearing. The judge did so, awarding tuition reimbursement to the parents based on his findings that the Board's IEP was not adequate under the law, and that the Newgrange School was an appropriate placement for D.C.

The Board filed suit in the United States District Court for the District of New Jersey, seeking to overturn this ruling. On September 3, 2003, the District Court granted the parents' motion for summary judgment as to the award of tuition reimbursement, affirming the ALJ's finding that the IEP was inadequate. This appeal followed, after entry of final judgment.

II.

Tuition reimbursement is available under the IDEA only where (1) a proposed IEP

3

is inadequate, because it fails to offer a child the required free and appropriate public education, and (2) the parents' unilaterally-chosen placement is an appropriate placement for the child. *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). This appeal requires us to determine whether the District Court erred by affirming the ALJ's ruling that the Board's proposed IEP for D.C.'s fourth-grade year was inadequate.[1]

This court's decision in *S.H. v. State-Operated School District of the City of Newark*, 336 F.3d 260 (3d Cir. 2003), decided while D.C.'s claims were pending in the District Court, provides clear guidance as to the proper standard of review. It establishes, first, that our review of the District Court's legal analysis is plenary. *Id.* at 269. Second, it makes clear that the proper legal standard for the District Court to apply was a "modified *de novo*" review, in which courts give "due weight" to the administrative findings.[2] *Id.* at 270. Under this standard, "[f]actual findings from the administrative proceedings are to be considered prima facie correct. If a reviewing court failed to adhere to them, it is obliged to explain why. The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities." *Id.* (quotation

---

[1]The Board does not challenge the District Court's determination that the Newgrange School was an appropriate placement.

[2]The Board contends that the administrative findings should receive reduced deference here, because they were made by an ALJ who did not himself hear the witnesses' testimony. However, the Board consented to this arrangement at the time, and we find its current objections unpersuasive. Likewise, we do not find it significant here that New Jersey has adopted a single-tier system of administrative review.

4

and alteration omitted).  We must accept the District Court's findings of historical fact

unless they are clearly erroneous, *T.R. v. Kingwood Township Bd. of Educ.*, 205 F.3d 572,

576 (3d Cir. 2000), but we may correct any legal error in the District Court's application

of the law to those facts.  *See Wexler v. Westfield Bd. of Educ.*, 784 F.2d 176, 181 (3d Cir.

1986).

The District Court applied the correct legal standard here, finding that, to satisfy

IDEA's substantive requirements, an IEP must be "reasonably calculated to enable the

child to achieve meaningful educational benefit."  *Board of Education v. Rowley*, 458

U.S. 176, 207 (1983).  An IEP need not provide the maximum possible benefit to the

child, but should provide for "significant learning."  *Ridgewood Bd. of Educ. v. N.E. ex

rel. M.E.*, 172 F.3d 238, 247 (3d Cir. 1999).

Although the record could support more than one view of D.C.'s situation, we find

no clear error in the District Court's understanding of the facts.  There is substantial

evidence in the record, which both the District Court and the New Jersey ALJ found

persuasive, showing that D.C. exhibited significant difficulties that received only

superficial attention, if any, in the District's IEP.  The District Court did not err in finding

that D.C.'s paper record, which derived from his performance in a setting very like that

proposed in the District's IEP, overstated his actual progress.[3]  There is evidence that, in

---

[3]In *Rowley*, the Supreme Court noted that, where a child is educated in the regular
public school classroom, "the achievement of passing marks and advancement from grade
to grade will be one important factor in determining educational benefit."  *Rowley*, 458

5

order to boost D.C.'s self-esteem, his previous grades were based largely on his effort, rather than his achievements, except in mathematics, an area in which he performs well. D.C.'s third-grade teacher had also allowed a high degree of informal accommodation of his disabilities, in the form of substantial assistance by his parents (amounting, at times, to outright completion by them of their child's assignments), as well as extra time to complete assignments. D.C.'s "successful" completion of classroom tasks does not appear probative of a "meaningful educational benefit," under the circumstances. Similarly, D.C.'s scores on standardized tests, while often within average ranges, do not appear to correspond to his day-to-day academic performance, and are not inconsistent with the District Court's finding that D.C. needed more assistance than the Board's IEP provided to achieve significant learning. We also find no error in the District Court's conclusion that the IEP failed to consider D.C.'s non-academic difficulties, which included depression and suicidal tendencies, as well as regular harassment and physical abuse by his schoolmates that resulted in repeated visits to the school nurse.

In addition, we find no error in the District Court's conclusion that the IEP did not provide any significant improvement over the resources that had already been provided to D.C. as a regular education student. Several of the types of special assistance that were

---

U.S. at 207 n.28. However, the Court also made clear that such advancement does not automatically prove, in all cases, that a child is receiving the required education. *Id.* at 203 n.25. Based on the evidence in this case that D.C.'s grades did not match his actual educational progress, we do not find his advancement from grade to grade conclusive.

included in the IEP, repeated strategies that had previously failed to help D.C. D.C. had participated in the school's "Friendship Club" before, for example, but had apparently failed to derive any benefit from it. Likewise, he had spent a year with the school's "Pencil Pushers" group, a form of occupational therapy. He already had speech and language therapy, without any significant benefit. Finally, D.C. had been assigned to a classroom with a special education teacher in second grade. Although the special education teacher there had not been formally assigned to assist him, the record includes evidence that the practical result for D.C. was the same attention that he would have received as one of the special education students formally designated as receiving special assistance from the special education teacher.

The District Court's discussion of its factual findings was extensive and thorough, and gave due weight to the ALJ's findings. Based on the District Court's factual findings, we find no error in the District Court's conclusion that, while there is conflicting evidence as to D.C.'s educational status, the Board has failed to carry its burden of proving that the IEP was adequate.

The Board also argues that the District Court erred by failing to consider whether the IEP offered education in the "least restrictive environment". As we made clear in the *S.H.* decision, a child "must be educated in the [least restrictive environment] that will *provide a meaningful education benefit.*" *S.H.*, 336 F.3d at 272 (emphasis in original). A placement that is not calculated to provide a meaningful educational benefit is

7

unacceptable, and it is irrelevant whether such a placement would be the least restrictive choice. Thus, the District Court did not err in declining to consider whether the Board's proposed placement was less restrictive than other possible alternatives, once the District Court had determined that the Board's placement would not provide the required meaningful educational benefit.[4]

III.

For the foregoing reasons, the judgment of the District Court will be affirmed.

---

[4]The Board's discussion of the "least restrictive environment" requirement might be more relevant to the question whether the Newgrange School – not the Board's proposed IEP – was an appropriate placement for D.C. However, as the Board acknowledges, that question is not before us.